Filed 8/11/26  P. v. Sanchez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G065004 |
| v. | (Super. Ct. No. 20NF2518) |
| OMAR SANCHEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge. Affirmed.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, A. Natasha Cortina and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Appellant.

Early one morning, defendant Omar Sanchez brazenly stole Jose Berrelleza's work van while Berrelleza and others were standing nearby. As Sanchez was driving away, Berrelleza ran after the van and grabbed onto the front passenger door. But he fell into the street and was run over and killed by the van. The question before us is whether Sanchez committed carjacking, so as to support his conviction for felony murder. More precisely, we must decide whether there is substantial evidence to support the jury's finding Sanchez used force or fear to retain the van from Berrelleza. We conclude there is and affirm the judgment.

STATEMENT OF FACTS

Berrelleza was a heavy equipment mechanic for a material handling company. Although he lived in Santa Ana, he kept his oversized work van at his parents' house in Anaheim. On workdays, Berrelleza would drive to the house at 6:00 a.m. to swap out his personal truck for the van and then head to work from there. During the swap, he often would run into his father, Jose, and his brother-in-law, Amado, who worked together. The men would talk outside for a few minutes before starting their workdays.

On the morning of September 22, 2020, Berrelleza arrived at Jose's house and began his usual routine. After moving his van from Jose's driveway into the street, Berrelleza left the vehicle idling while chatting with Jose a few feet away. Amado was also nearby, loading belongings into his own truck, next to the van. While doing so, Amado noticed a man, later identified as Sanchez, in the driver's seat of the van. Amado alerted Berrelleza to this fact, and as Sanchez began driving forward in the van, Berrelleza ran after it.

Berrelleza caught up to the van and grabbed onto the front passenger door as Sanchez continued driving. Berrelleza managed to open

2

the door and get at least partially inside the van, but as the van sped up, he lost his grip and fell onto the street. Sanchez kept driving, running over and killing Berrelleza with the van. He then drove to a motel in the area. The police arrested him later that day in a car that contained tools from the van.

At trial, Jose and Amado testified that Sanchez swerved the van as Berrelleza was precariously hanging onto the passenger door, causing Berrelleza to fall. In addition, a vehicular homicide investigator who responded to the scene testified he found curvature marks in the street indicating the van may have swerved before Berrelleza fell off.

Two home surveillance cameras captured aspects of the incident on video. The videos, which were played for the jury, show Sanchez driving off in the van and Berrelleza running after it, but they do not show the moment he falls from the van and gets run over.

The jury convicted Sanchez of first degree felony murder on the theory he killed Berrelleza during the commission of a carjacking. (Pen. Code, §§ 187, subd. (a), 189, subd. (a).) The trial court sentenced Sanchez to prison for 25 years to life.

DISCUSSION

Sanchez's appeal focuses on the carjacking component of the prosecution's felony-murder theory. He contends there is insufficient evidence he carjacked Berrelleza because, in his view, he did not use force or fear to retain the van. We disagree.

In assessing the sufficiency of the evidence to support a criminal conviction, "'we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence— that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable

3

doubt. [Citations.] "'[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.'" [Citation.] This standard applies whether direct or circumstantial evidence is involved." (*People v. Lopez* (2017) 8 Cal.App.5th 1230, 1233–1234 (*Lopez*).)

As relevant here, the crime of carjacking requires proof the defendant took the victim's vehicle "by means of force or fear." (Pen. Code, § 215.) The force or fear requirement is patterned after the robbery statute. (See *id.*, § 211; *Lopez, supra,* 8 Cal.App.5th at p. 1234.) Thus, "[j]ust as a 'mere theft becomes robbery if the perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot' [citation], so mere vehicle theft becomes carjacking if the perpetrator, having gained possession of the motor vehicle without use of force or fear, resorts to force or fear while driving off with the vehicle." (*People v. O'Neil* (1997) 56 Cal.App.4th 1126, 1131.)

However, courts have drawn a distinction between robbery and carjacking when it comes to the amount of force needed to satisfy the force or fear requirement. Although robbery requires more force than is needed to take or retain the subject property, *Lopez* determined carjacking does not because "the taking of a car from the immediate presence of its driver or passengers creates a fundamentally more hazardous situation than the taking of most other forms of property . . . ." (*Lopez, supra,* 8 Cal.App.5th at p. 1237.) Thus, in *Lopez*, the court found the force or fear requirement satisfied where the defendant, without using any more force than needed to complete the taking, simply backed the victim's car out of a parking space while the victim was holding the driver's side door handle and trying to open the door. (*Id.* at pp. 1233, 1235–1237.)

4

Similarly, in *People v. Hudson* (2017) 11 Cal.App.5th 831 (*Hudson*), the court found the force or fear requirement satisfied where the defendant stole a car from a dealership after an employee of the dealership opened the driver's side door and tried to grab the defendant. (*Id*. at pp. 833–834, 836–840.) Agreeing with *Lopez*, the *Hudson* court reasoned the force inherent in continuing to drive a vehicle away from a resisting victim is sufficient to justify a different standard in carjacking cases, as compared to robbery cases. (*Hudson*, at p. 840.)

Sanchez contends *Lopez* and *Hudson* were wrongly decided because they effectively read the force or fear requirement out of the carjacking statute. He invites us to part company with those decisions and adopt the rule used in robbery cases that the force must be greater than that required to simply take or retain the property from the victim.

Our response is twofold. First, we believe the reasoning in *Lopez* and *Hudson* is sound, considering the intrinsic dangers associated with unlawfully taking a motor vehicle from another person. Indeed, the case at hand illustrates the danger involved when a defendant resists a victim's efforts to regain possession of his vehicle by continuing to drive away with the vehicle.

Second, even if we were to require proof Sanchez used more force than was inherent in the act of driving away with Berrelleza's van, the record contains substantial evidence of this. Jose and Amado both testified Sanchez swerved the van before Berrelleza fell to his death, and the curvature marks found in the street corroborated their testimony. As Sanchez points out, there were some inconsistencies between Jose and Amado's version of events, and their trial testimony differed in some respects from what they told the police. For example, Jose testified Berrelleza was able to get his entire body inside

5

the van before falling off, Amado testified Berrelleza only got part of his body inside, and Amado told the police Berrelleza fell before getting inside the van. And, in his statement to the police, Amado never mentioned anything about the van swerving before Berrelleza fell.

Nevertheless, "'it is the exclusive province of the . . . jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) And on appeal, a witness's testimony may suffice to uphold a judgment, "even if it is contradicted by other evidence, inconsistent or false as to other portions." (*People v. Leigh* (1985) 168 Cal.App.3d 217, 221; e.g., *People v. Gomez* (2018) 6 Cal.5th 243, 281 [notwithstanding conflicts in the evidence and various reasons to discount the prosecution witness's testimony, there was sufficient evidence to support the jury's guilty verdict].) "[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Sanchez points to the two surveillance videos as unassailable proof he did not swerve the van, but neither video shows Berrelleza falling from the van. Moreover, the videos were taken from angles that were different than the angle from which the eyewitnesses saw the incident. Jose and Amado had an up-close view of things and were in the midst of the action as the incident unfolded. Because they were in a unique position to see what was going on and how events transpired, the jury was entitled to accept their testimony as credible. (See generally *Love v. State* (Ind. 2017) 73 N.E.3d 693, 700 [upholding the defendant's conviction for resisting arrest despite his claim that video evidence proved he was cooperative with the police]; *State v. Lomu* (Utah Ct.App. 2014) 321 P.3d 243, 248–249 [upholding the defendant's

6

robbery conviction even though the victim's testimony was not entirely consistent with the video evidence].)

That being the case, there is no basis to disturb the judgment. Assuming the prosecution was required to prove Sanchez used more force than was necessary to drive the van away from the scene, there is substantial evidence to support any such requirement.

## DISPOSITION

The judgment is affirmed.

GOODING, J.

WE CONCUR:


DELANEY, ACTING P. J.


SCHWARM, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.